Stephen P. Arnot, Assistant U.S. Trustee
   Oregon Bar No. 070765
     Email: steve.arnot@usdoj.gov
     Direct: (503) 780-4290
1220 SW 3rd Avenue, Suite 315
Portland, OR 97204

Millie Aponte Sall, Assistant U.S. Trustee
   Tex. Bar No. 01278050/Fed. ID No. 11271
     Email: millie.sall@usdoj.gov
     Direct: (713) 718-4660
Vianey Garza, Trial Attorney
   Tex. Bar No. 24083057/Fed. ID No. 1812278
     Direct: (713) 718-4661
     Email: vianey.garza@usdoj.gov
Alicia L. Barcomb, Trial Attorney
   Tex. Bar No. 24106276/Fed. ID No. 3456397
     Direct: (713) 718-4663
     Email: alicia.barcomb@usdoj.gov
Office of the United States Trustee, Houston
515 Rusk, Suite 3516
Houston, Texas 77002

Attorneys For Kevin M. Epstein, United States Trustee, Region 7

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re:<br><br>Professional Fee Matters Concerning the Jackson Walker Law Firm | Miscellaneous Proceeding<br>Case No. 3:24-mc-894-AB<br><br>[Related Case No. 23-00645 From The Bankruptcy Court for the Southern District of Texas, Houston Division]<br><br>**UNITED STATES TRUSTEE'S MOTION TO COMPEL DISCOVERY**<br><br>**EXPEDITED HEARING REQUESTED [LR 7-1(G)]**<br><br>**REQUEST FOR ORAL ARGUMENT** |

1

Kevin M. Epstein, the United States Trustee for Region 7 (the "U.S. Trustee") moves for an order compelling compliance with the third-party subpoenas for discovery and examination of Peter Jarvis ("Mr. Jarvis") and Jacqueline Harvey ("Ms. Harvey," and with Mr. Jarvis the "Respondents"), with respect to the pending discovery requests identified below (the "Discovery Requests"). In support of this motion, the U.S. Trustee states as follows:

### Meet and Confer Certification
### District Court LR 7-1(a) & Bankruptcy Court LR 7007-1(c)(3)

The U.S. Trustee conferred with counsel for Jackson Walker LLP ("Jackson Walker"), and counsel for the Respondents about the relief sought in this Motion, and although Jackson Walker's counsel agreed Respondents could produce communications it sent to third parties, the parties were otherwise unable, after a good faith effort through letters and video conference calls, to resolve the remainder dispute related to the application of the attorney-client privilege in these matters.

The U.S. Trustee also conferred with the same counsel about consideration of this Motion on an expedited basis so that the Trustee can meet certain discovery deadlines. Counsel opposes consideration of this Motion on an expedited basis.

### SUMMARY

1. The U.S. Trustee filed several motions against Jackson Walker in Houston, Texas requesting relief stemming from Jackson Walker's decisions not to inform clients, parties in interest, and courts of the romantic relationship between its former partner, Elizabeth Freeman ("Ms. Freeman"), and former bankruptcy judge David R. Jones ("Judge Jones"). The Respondents were at all relevant times attorneys at the law firm of Holland & Knight who Jackson Walker hired as ethics experts.

2.  As justification for its decisions not to disclose the relationship, Jackson Walker has intentionally disclosed some of Respondents' advice in public pleadings. It has also forwarded at least two of the Respondents' opinion letters to third parties and produced those letters in discovery. However, Jackson Walker still improperly asserts attorney-client privilege with respect to Respondents' communications and testimony regarding that advice upon which it continues to rely.

3.  The U.S. Trustee's Discovery Requests require the Respondents to appear and be deposed and to produce the following:

   1. *All documents provided to You and/or Holland & Knight by Jackson Walker in connection with Jackson Walker's engagement of You and/or Holland & Knight in connection with the Relationship.*

   2. *All documents received by You and/or Holland & Knight in connection with Your engagement by Jackson Walker to assist in matters related to the Relationship.*

   3. *All documents relied on by You and/or Holland & Knight in providing any advice to Jackson & Walker [sic] regarding the Relationship.*

   4. *All documents relied on by You and/or Holland & Knight in providing any advice to Jackson & Walker regarding Freeman.*

   5. *All documents between You and/or Holland & Knight and Jackson & Walker relating to the Relationship, including the Judicial Disqualification Matter Letter and any responses to that Letter thereto from You and/or Holland & Knight.*

   6. *All documents between You and/or Holland & Knight and Jackson & Walker relating to Freeman.*

   7. *All agreements between You and/or Holland & Knight and Jackson & Walker in which You and/or Holland & Knight agreed to provide advice to Jackson & Walker in connection with the Relationship and/or Freeman.*

4.  Because Jackson Walker has voluntarily and repeatedly waived any attorney-client or other privilege and because has put and continues to put Respondents' advice at issue, the Respondents should be required to comply with the Discovery Requests and appear and be deposed.

## FACTUAL BACKGROUND

5. On October 13, 2023, Judge Jones announced his resignation from the bench following the exposure of a previously undisclosed, years-long intimate relationship with Ms. Freeman, a partner at Jackson Walker during a time when it regularly appeared in cases presided over or mediated by Judge Jones.

6. The U.S. Trustee has filed substantially similar motions seeking relief from judgment under Rule 60(b)(6) (the "Rule 60 Motions") with respect to Jackson Walker's retention and compensation applications in numerous cases (the "Affected Cases").

7. On November 13, 2023, Jackson Walker filed a preliminary response to the Rule 60 Motions in each of the Affected Cases. *See, e.g.*, **Exhibit 1** (the "Preliminary Response"). Jackson Walker asserted in the Preliminary Response that: (i) it had not been aware of any relationship between Judge Jones and Ms. Freeman until March 2021; (ii) at that time, Ms. Freeman advised Jackson Walker her intimate relationship with Judge Jones had terminated; and (iii) Jackon Walker did not discover Ms. Freeman and Judge Jones were engaged in an ongoing relationship until 2022. *See* Prelim. Resp. at 4–5. In support of these assertions, Jackson Walker disclosed that, on March 8, 2021, it retained Mr. Jarvis and Holland & Knight (the "Freeman Engagement") as outside ethics counsel, "to ensure that [Jackson Walker] understood its legal and ethical obligations." *Id.* at 4. Ms. Harvey assisted Mr. Jarvis with this engagement.

8. Jackson Walker's Preliminary Response includes a draft letter dated "August __,2021" (the "August Letter") from Jackson Walker to Mr. Jarvis that purportedly sets forth Jackson Walker's knowledge as of March 2021. In the August Letter, Jackson Walker asks for Mr. Jarvis's legal opinion about whether certain "Recommended Actions" are "appropriate and sufficient to address these circumstances, from the standpoint of avoiding disqualification of Judge

Jones or Jackson Walker when we appear in cases before him and in terms of our own ongoing compliance with applicable ethical requirements." *Id.* The Preliminary Response reveals the Respondents' legal advice to Jackson Walker by representing that Mr. Jarvis, "concluded that the measures taken by Jackson Walker, based on the facts stated in the letter, which were confirmed by Ms. Freeman, were sufficient to meet Jackson Walker's obligations." *Id.* at ¶ 15. The Preliminary Response further discloses that in 2022, Jackson Walker "reached out again" to Mr. Jarvis regarding the Freeman Engagement, and "discussed the situation" with Ms. Freeman's counsel, Tom Kirkendall ("Mr. Kirkendall"). *Id.*

9. Jackson Walker continued to put its communications with the Respondents at issue by arguing in its response to the U.S. Trustee's amended Rule 60 Motions that it always acted reasonably and took reasonable remedial measures based on the Respondents' advice. *See, e.g.,* **Exhibit 2** (the "Amended Response") at ¶¶ 1–2, 10, 37–39, 52–53, 77, 79, 144, 160, 183, and 186.

10. On November 21, 2023, Mr. Kirkendall, a lawyer for more than 40 years, appeared for a voluntary interview with the U.S. Trustee (the "Interview"). There was no agreement that the Interview would be confidential, and there was no assertion that any information disclosed was privileged.

11. Mr. Kirkendall disclosed at the Interview that Ms. Freeman retained him on April 8, 2022, to represent her regarding Jackson Walker and the implications of her relationship with Judge Jones.

12. As set forth in the attached correspondence dated April 22 to 25, 2022, it appears Jackson Walker produced to Mr. Kirkendall a September 1, 2021, finalized version of its August Letter (the "September Letter") relaying to Mr. Jarvis the purported facts and "Recommended

Actions." *See* **Exhibit 3**. Jackson Walker's counsel has represented that the September Letter is not identical to the August Letter.

13. Jackson Walker also produced to Mr. Kirkendall both Mr. Jarvis's response opinion letter dated September 22, 2021 (the "First Opinion"), and its September 24 email analysis of Mr. Jarvis's First Opinion. *Id.*

14. At the Interview, Mr. Kirkendall also disclosed that he participated in five conference calls with Mr. Jarvis from May 10, 2022, through June 28, 2022.[1] Mr. Kirkendall shared that Mr. Jarvis advised Jackson Walker it had to disclose the relationship between Ms. Freeman and Judge Jones. Further, as evidenced by Mr. Kirkendall's privilege log, Jackson Walker also provided him with the Respondents' second opinion letter dated June 2, 2022 (the "Second Opinion"). *See* **Exhibit 4**. At his deposition, Mr. Kirkendall testified Matt Cavenaugh, a Jackson Walker partner, gave him the Respondents' First Opinion and Second Opinion (collectively, the "Opinion Letters").

15. On June 4, 2024, the U.S. Trustee served subpoenas for testimony and documents on the Respondents. *See* **Exhibits 5, 6**.

16. On June 18, 2024, the Respondents served objections to the U.S. Trustee's subpoenas. *See* **Exhibits 7, 8**. The basis for the objections is that Jackson Walker seeks to preserve all available privileges, including the attorney-client privilege. Respondents refused to turn over responsive documents based on Jackson Walker's claim of attorney-client privilege and instead provided a privilege log.[2] **Exhibit 9**.

---

[1] Documents produced by Mr. Kirkendall show that he included Ms. Harvey on the meeting invitations to four of the conferences.

[2] Although the Respondents' objections stated that Jackson Walker desired to "preserve all available privileges[,]" Jackson Walker has only asserted the attorney-client privilege. *See*

6

17. On several occasions, the U.S. Trustee met and conferred in good faith with Jackson Walker to resolve the discovery objections via written communications and videoconferences. *See e.g.*, **Exhibits 10, 11, 12, 13, 14,** and **15**.

18. On August 7, 2024, Jackson Walker produced to the U.S. Trustee the Second Opinion that was previously withheld under an assertion of attorney-client privilege.[3]

19. The U.S. Trustee has raised production of both Opinion Letters with Jackson Walker's counsel, and Jackson Walker has not asserted that the disclosures were inadvertent or sought to claw back the documents. Jackson Walker has clawed back other unrelated documents.

## ARGUMENT

20. Although no party has filed a motion to quash, the Respondents have informally refused to comply with the Discovery Requests asserting that all communications involving Holland & Knight, Mr. Jarvis, or Ms. Harvey are protected by the attorney-client privilege. *See* **Exhibit 9**. This contention is misplaced.

21. To the extent any attorney-client privilege applied to the documents or testimony sought by the Discovery Requests, it has been waived by Jackson Walker's and the Respondents' voluntary disclosures to Mr. Kirkendall, *see* **Exhibits 3, 4**, to the public in the Preliminary Response and Amended Response, *see* **Exhibits 1, 2**, and to the U.S. Trustee in discovery, *see* **Exhibit 13**. Further, Jackson Walker has waived or is estopped from using the privilege as both a sword and shield. *See Willy v. Admin. Review Bd.*, 423 F.3d 483, 497 (5th Cir. 2005) ("That [sword-and-shield] analogy is a product of our parallel reasoning behind the doctrine of implied

---

**Exhibit 9**. Claims of privilege on any other ground have been waived. *See* Fed. R. Civ. P. 26(b)(5).

[3] Because Jackson Walker marked the Second Opinion "Confidential" pursuant to a Stipulated Protective Order, it is not attached to this motion.

waiver: a party may not use privileged information both offensively and defensively at the same time."); *see also Liberty Mut. Ins. Co. v. Tedford*, 644 F. Supp. 2d 753, 764 (N.D. Miss. 2009) (holding work product privilege is also waived by sword-and-shield use).

**A.     The Attorney-Client Privilege Has Been Waived.**

22.     The attorney-client privilege "'is not favored by federal courts' and 'is to be strictly confined within the narrowest possible limits consistent with the logic of its principle,'" because it "interferes with the 'truth seeking mission of the legal process[.]'" *United States v. Aromony*, 88 F.3d 1369, 1389 (4th Cir. 1996) (quoting *In re Grand Jury Proceedings*, 727 F.2d 1352, 1355 (4th Cir. 1984); *United States v. Tedder*, 801 F.2d 1437, 1441 (4th Cir. 1986)). Accordingly, the burden of demonstrating that a communication is protected by the attorney-client privilege rests with the party asserting the privilege. *United States v. El Paso Co.*, 682 F.2d 530, 538 (5th Cir. 1982), *cert. denied*, 466 U.S. 944 (1984). This is done by a party "prov[ing]: (1) that he made a confidential communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding." *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997).

23.     Attorney-client communications, however, are not privileged when the communications pass beyond the attorney and the client. *See, e.g., El Paso Co.*, 682 F.2d at 539. This breach can be caused by the publication of the communications themselves or attorney statements or documents that disclose the communications. *Id.* at 439 (citing *Indus. Clearinghouse, Inc. v. Browning Mfg.*, 953 F.2d 1004, 1007 (5th Cir. 1992)).

24.     Subject matter waivers are governed by Rule 502(a) of the Federal Rules of Evidence, which states:

> When the disclosure is made in a federal proceeding or to a federal office or agency and waives the attorney-client privilege or work-product protection, the waiver

> extends to an undisclosed communication or information in a federal or state proceeding only if:
> (1) the waiver is intentional;
> (2) the disclosed and undisclosed communications or information concern the same subject matter; and
> (3) they ought in fairness to be considered together.

Under this rule, a party cannot make selective representations and presentations. Fed. R. Evid. 502, Advisory Committee Notes. Ultimately, the size or breadth of the information revealed does not matter because the "disclosure of any significant portion of a confidential communication waives the privilege as to the whole." *Nguyen v. Excel Corp.*, 197 F.3d 200, 208 (5th Cir. 1999) (quoting *Indus. Clearinghouse*, 953 F.2d at 1007; *see also* Fed. R. Evid. 502(a); Fed. R. Bankr. P. 9017 (incorporating the Federal Rules of Evidence). This waiver extends to all communications within the same subject matter, not just the issue therein. *Sec. & Exch. Comm'n v. Brady*, 238 F.R.D. 429, 441 (N.D. Tex. 2006).

25. In this case, Jackson Walker has disclosed the August Letter. Prelim. Resp. at Exhibit 1.[4] It also produced Mr. Jarvis's First Opinion. *See* **Exhibit 13**. Further, the Respondents told Mr. Kirkendall in June of 2022 their conclusions with respect to the Freeman Engagement, and Jackson Walker provided to him copies of their Opinion Letters. Finally, Jackson Walker provided the U.S. Trustee with a copy of the Second Opinion Letter on August 7, 2024.

26. Based on these intentional disclosures, Jackson Walker has also waived the attorney-client privilege as to undisclosed communications or information concerning the Freeman Engagement including, but not limited, to those set forth in **Exhibit 9**.

27. Respondents also cannot claim privilege with respect to any communications between the Respondents and outside parties, including Mr. Kirkendall. A threshold requirement

---

[4] As evidence that it acted appropriately, Jackson Walker's counsel asserts in **Exhibit 15** that the letter sent to Mr. Jarvis is different than what it attached to the Preliminary Response.

for the invocation of attorney-client privilege is that the communication must have arisen in the context of an attorney-client relationship. *See United States v. Kelly*, 569 F.2d 928, 938 (5th Cir. 1978). Based on Jackson Walker's own description of events, Mr. Kirkendall's discussions with Mr. Jarvis involved issues where Jackson Walker and Ms. Freeman were adverse. Although Mr. Kirkendall is an attorney, his client is Ms. Freeman, not Jackson Walker or Holland & Knight. No attorney-client relationship can be said to have arisen between Mr. Jarvis and Mr. Kirkendall. Any privilege regarding the subject matter of the Freeman Engagement has been waived, and any undisclosed communications or information should be considered with what has been disclosed.

28. Further, courts have long recognized that litigants may not use the privilege as both a "shield and a sword." *United States v. Bilzerian*, 92 F.2d 1285, 1292 (2d Cir. 1991); *see also Pall Corp. v. Cuno, Inc.*, 268 F.R.D. 167, 168 (E.D.N.Y. 2010). "Courts have found waiver by implication . . . when a client places the attorney-client relationship directly at issue." *In re Cnty. of Erie*, 546 F.3d 222, 228 (2d Cir. 2008) (punctuation omitted); *see also In re Schlumberger Tech. Corp.*, 818 F. App'x 304, 307 (5th Cir. 2020).

29. In this case, Jackson Walker relies on the information provided to the Respondents and the Respondents' conclusions in their First Opinion to support its assertions that no Jackson Walker attorney (other than Ms. Freeman) was aware of the Freeman-Jones relationship before March 2021, and that Jackson Walker acted appropriately when it failed to disclose that relationship in 2021 and thereafter. By claiming privilege with respect to these conversations with the Respondents (as well as their conversations with a third party), Jackson Walker denies the U.S. Trustee any opportunity to examine the context, factual assumptions, and purported diligence that led the Respondents to reach those conclusions. Jackson Walker further denies the U.S. Trustee any opportunity to examine the context, factual assumptions, and purported diligence that led the

Respondents to reach the conclusions set forth in their Second Opinion. This kind of selective disclosure waives any attorney-client privilege that might otherwise exist. *See Doe 1 v. Baylor Univ.*, 320 F.R.D. 430, 439 (W.D. Tex. 2017).

## CONCLUSION

For the foregoing reasons, any attorney-client privilege has been affirmatively and impliedly waived, and the U.S. Trustee is entitled to an order compelling the Respondents to respond to his Discovery Requests and appear and be deposed and that any hearing on the UST's motion to compel discovery be heard on 7 days' notice.[5]

WHEREFORE, the U.S. Trustee respectfully requests that the Court grant his motion to expedite the hearing on the U.S. Trustee's this Motion to Compel by requiring the Respondents to respond to the Discovery Requests and appear and be deposed, and to enter any other relief the Court deems just or appropriate in law or equity.

*[Signature Page Follows]*

---

[5] Expedited consideration of this Motion is warranted given Respondents were served with the subpoenas on June 5, 2024 and have had ample notice of this Motion would be filed such that shortening the time for hearing will not be prejudicial on Respondents.

Date: September 3, 2024                                             Respectfully Submitted,

KEVIN M. EPSTEIN
UNITED STATES TRUSTEE
REGION 7, SOUTHERN AND WESTERN
DISTRICTS OF TEXAS

By: /s/ Stephen P. Arnot
RAMONA D. ELLIOTT                          Stephen P. Arnot
Deputy Director/                           Assistant U.S. Trustee, Region
General Counsel                            Oregon Bar No. 070765
NAN ROBERTS EITEL                          Office of the United States Trustee
Associate General Counsel                  1220 SW 3rd Avenue, Suite 315
Fed. ID No. 561266                         Portland, OR 97204
DANIELLE PHAM                              Tel: (503) 326-4004
Trial Attorney                             Email: steve.arnot@usdoj.gov
Department of Justice                      MILLIE APONTE SALL
Executive Office for                       Assistant U.S. Trustee
United States Trustees                     Tex. Bar No. 01278050/Fed. ID No. 11271
Washington, D.C. 20530                     VIANEY GARZA
(202) 307-1399 – Telephone                 Trial Attorney
                                           Tex. Bar No. 24083057/Fed. ID No. 1812278
                                           ALICIA BARCOMB
                                           Trial Attorney
                                           Tex. Bar No. 24106276/Fed ID No. 3456397
                                           515 Rusk, Suite 3516
                                           Houston, Texas 77002
                                           (713) 718-4650 – Telephone
                                           (713) 718-4670 – Fax
                                           Email: millie.sall@usdoj.gov
                                                  vianey.garza@usdj.gov
                                                  alicia.barcomb@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2024 a copy of the foregoing *United States Trustee's Motion to Compel Discovery* was emailed to the parties entitled to receive notice in the underlying proceeding and to counsel for the Respondents.

By: /s/ Vianey Garza
Vianey Garza

## CERTIFICATE OF COMPLIANCE

This motion complies with the applicable word-count limitations under LR 7-2(b), and 26-3(b) and 37-1 because it contains 2,936 words, including headings, footnotes, and quotations, but excluding the caption, signature block, exhibits, and any certificates of counsel.

By: */s/ Vianey Garza*
Vianey Garza