**Stephen P. Arnot**, OR Bar No. 070765
**Laura Steele**, WI Bar No. 1065702
**Vianey Garza**, TX Bar No. 24083057
**Alicia Barcomb**, TX Bar No. 24106276
Office of the U.S. Trustee
515 Rusk, Suite 3516
Houston, TX 77002
(713) 718-4650
*Attorneys for Kevin M. Epstein, United States Trustee, Region 7*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| In re:<br><br>Professional Fee Matters Concerning the Jackson Walker Law Firm | Miscellaneous Proceeding<br>Case No. 3:24-MC-894-AB<br><br>Related to Case No. 23-00645 (EVR)<br>(Bankr. S.D. Tex., Houston Division)<br><br>**UNITED STATES TRUSTEE'S REPLY IN SUPPORT OF MOTION TO COMPEL DISCOVERY** |

Kevin Epstein, United States Trustee for Region 7 ("U.S. Trustee"), in further support of his Motion to Compel Discovery (ECF 1, "Motion") from Peter Jarvis and Jacqueline Harvey (collectively, "Respondents"), and as a Reply to the Responses filed by the Respondents (ECF 21, "HK Response") and Jackson Walker LLP (ECF 22, "JW Response"), states:

**SUMMARY OF ARGUMENT**

The Respondents and Jackson Walker omit or misconstrue both law and fact. Rather than the "narrow and extreme" circumstances necessitating waiver espoused by Jackson Walker, *see* JW Resp. at 1, the attorney-client privilege must be narrowly construed because it impedes the search for truth, and Jackson Walker and the Respondents bear the burden of establishing the privilege and protecting it. They have done neither. Jackson Walker has shared communications between it and the Respondents with parties outside the privilege "magic circle" and has repeatedly

1

cited those communications in defenses it denies asserting, yet refuses to withdraw them when expressly asked by the U.S. Trustee. Jackson Walker is using privilege as both a sword and a shield and asks this Court to approve that legal gamesmanship to disadvantage the U.S. Trustee in his litigation of 33 cases seeking to hold Jackson Walker accountable for its repeated, years'-long professional misconduct. Because Jackson Walker and the Respondents have expressly and implicitly waived the attorney-client privilege in multiple ways and fail to satisfy their evidentiary burden, the U.S. Trustee's Motion should be granted.

## ARGUMENT

**I. Neither the Respondents nor Jackson Walker establish all the requirements to assert attorney-client privileged information.**

Neither the Respondents nor Jackson Walker carry their burden of demonstrating a protectable attorney-client privilege.

A. The burden of establishing a protectable privilege lies with the Respondents or Jackson Walker.

The party who resists discovery has the burden to show discovery should not be allowed and has the burden of clarifying, explaining, and supporting its objections. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975); *see also McLeod, Alexander, Powel and Apffel, P.C., v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990).[1]

B. By failing to produce privilege logs for material in their possession, the Respondents fail to identify—and therefore protect—allegedly privileged items.

The Respondents expressly and separately objected "to producing documents in response to the Subpoena pursuant to FRCP 45(d)(2)(B)." UST Mot., Exs. 7-8. Jackson Walker

---

[1] Ninth Circuit common law appears to control the U.S. Trustee's Motion. *See, e.g.*, *KGK Jewelry LLC v. ESDNetwork*, No. 11 CIV. 9236 LTS RLE, 2014 WL 1199326, at *3 (S.D.N.Y. Mar. 21, 2014) (citing Fed. R. Civ. P. 45(d)(3) and stating, "Jurisdiction over a motion to quash or modify, however, remains with 'the court for the district where compliance is required.'"). This Court is the place where the Respondents' compliance is required.

2

subsequently provided a privilege log for documents in its possession that may be responsive to the Respondents' subpoenas. UST Mot., Ex. 9; Steele Decl. at 2 n.1. Jackson Walker's production of a privilege log for documents in *its* possession does not abrogate the Respondents' duties under Rule 45.[2]

The Respondents are bound by Fed. R. Civ. P. 45(e)(2), applicable to information withheld. Rule 45 provides that the Respondents—each a "person withholding subpoenaed information under a claim that it is privileged"—"must" "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. P. 45(e)(2)(A)(ii). Neither of the Respondents have provided a privilege log.

This is significant because the responsive documents in the Respondents' possession might be different than the responsive documents in Jackson Walker's possession. For example, the Respondents might possess emails from or emails sent to Jackson Walker that were automatically deleted under Jackson Walker's document retention policy. *See, e.g.*, Steel Decl., Ex. 16 (transcript excerpt of Jackson Walker's current general counsel) & Ex. 17 (transcript excerpt of Jackson Walker's former general counsel from 2021 and 2022). As further reflected by communications received by the U.S. Trustee from a different third-party, Tom Kirkendall, and as admitted by

---

[2] Similarly, Jackson Walker's Response is no substitute for a motion to quash. Although the Respondents can and did object to their subpoenas, Jackson Walker needed to move to quash those subpoenas or move for a protective order. *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005); *see also MC Trilogy Tex. v. City of Heath*, 2023 U.S. Dist. LEXIS 160049 **26-27 (N.D. Tex. Sept. 11, 2023). Although the U.S. Trustee agreed he would not object to a motion to quash based on untimeliness, the U.S. Trustee never agreed to waive the requirement to file a motion to quash altogether. *See* UST Mot., Ex. 10 at 1; *see also, e.g.*, *Anderson v. Abercrombie & Fitch Stores, Inc.*, 2007 U.S. Dist. LEXIS 47795 **25-26 (S.D. Cal. 2007) (citing cases from the 5th and 9th Circuit Courts of Appeals requiring the filing of a motion). Despite having three months to do so, Jackson Walker has not filed a motion to quash or for a protective order.

3

Jackson Walker, the Respondents had their own unprivileged communications with Mr. Kirkendall relating to Jackson Walker. *See* JW Resp. at 6, ¶ 18; *see also* Steele Decl., Ex. 18. One of the Respondents may have different responsive documents than the other.

Although one or both of the Respondents communicated with Mr. Kirkendall both before and after June 2, 2022, *id.*, and although the U.S. Trustee requested the following documents listed below from the Respondents:

> 2. All documents received by You and/or Holland & Knight in connection with Your engagement by Jackson Walker to assist in matters related to the Relationship.
>
> 3. All documents relied on by You and/or Holland & Knight in providing any advice to Jackson & Walker regarding the Relationship.
>
> 4. All documents relied on by You and/or Holland & Knight in providing any advice to Jackson & Walker regarding Freeman.

UST Mot., Ex. 6 at 4, ¶¶ 2-4, they have produced no documents to the U.S. Trustee.

Without a privilege log from each of the Respondents, the Court and the U.S. Trustee are unable to determine which unspecified documents referred to by the Respondents are allegedly protected by "various" privileges. *See* HK Resp. at 2. Without a privilege log from each of the Respondents, they cannot and do not establish a prima facie case for attorney-client privilege. *See In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992); *United States v. El Paso Co.*, 682 F.2d 530, 541 (5th Cir. 1982). The Respondents should be ordered to produce responsive documents.

C. <u>The Respondents' and Jackson Walker's assertions of privilege are not supported by facts that would be admissible in evidence.</u>

Independent of the Respondents' failure to produce a privilege log, neither the Respondents nor Jackson Walker meet the burden of establishing a claim of privilege. "The burden is on the party asserting the privilege to establish <u>all</u> the elements of the privilege[,] and an assertion of

privilege without evidence to support it will not prevail." *In re Syncor ERISA Litig.*, 229 F.R.D. 636, 644 (C.D. Cal. 2005) (emphasis added) (citations omitted); *see also Hodges, Grant & Kaufmann v. I.R.S.*, 768 F.2d 719, 721 (5th Cir. 1985) ("The burden of demonstrating the applicability of the privilege rests on the party who invokes it.").

Although they bear the burden of establishing the existence of an attorney-client privilege, the Respondents' and Jackson Walker's Responses attach no documents, reference no affidavits or sworn declarations, and apparently assume "the first seven elements are undisputed with respect to the Memos." JW Resp. at 10. They assume incorrectly.

After the U.S. Trustee questioned the purpose of the communications with the Respondents, Jackson Walker represented two, contradictory purposes in, for example, its meet and confer letter to the U.S. Trustee dated July 26, 2024:

> The statement in Jackson Walker's pleadings that *Mr. Jarvis "concluded* that the *measures taken by Jackson Walker*, based on the facts stated in the letter, which were confirmed by Ms. Freeman, *were sufficient to meet Jackson Walker's obligations*" likewise does not reveal privileged attorney-client communications, as it *does not address any of the legal advice sought or received*. Again, *it was simply to reaffirm the factual premise upon which Jackson Walker understood* at the time as to the nature of the relationship with Ms. Freeman and former Judge Jones.

UST Mot., Ex. 15 (emphases added); *see also* discussion *infra* III.C.1-2.

Jackson Walker's positions are antithetical. If the Respondents were engaged by Jackson Walker merely to "reaffirm the factual premise upon which Jackson Walker understood at the time as to the nature of the relationship with Ms. Freeman and former Judge Jones," then the Respondents were not engaged to provide legal advice.[3] If the Respondents were in fact engaged by Jackson Walker to provide legal advice, then Jackson Walker must demonstrate through facts

---

[3] For their part the Respondents represented, "The subpoenas call for documents regarding Respondents' prior representation of the Jackson Walker Firm . . . in which Respondents provided ethics and professional responsibility advice . . . ." HK Resp. at 1-2.

5

that would be admissible in evidence that it intended to do so. Jackson Walker cannot have it both ways.

Jackson Walker and the Respondents cannot carry their burden of establishing all elements of privilege when they do not even attempt to do so and instead merely make conclusory statements. The Respondents should be ordered to produce responsive documents.

**II.    Jackson Walker waived any attorney-client privilege regarding the 2021 Draft Letter, 2021 Jarvis Request Letter, 2021 Memo, and 2022 Memo.[4]**

A. <u>The attorney-client privilege is strictly construed and broadly waived in multiple ways.</u>

The purpose of the attorney-client privilege is premised on confidentiality. *United States v. Sanmina Corp.*, 968 F.3d 1107, 1120 (9th Cir. 2020) (quoted source omitted); *see also Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989). Because that confidentiality impedes full and free discovery of the truth, it should be strictly construed. *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (citations and quotations omitted); *United States v. Pipkins*, 528 F.2d 559, 562-63 (5th Cir. 1976). Any disclosure outside of the "magic circle" shared by the attorney and client is inconsistent with the privilege. *Sanmina*, 968 F.3d at 1120 (quoted source omitted); *Pipkins*, 528 F.2d at 563. Accordingly, waivers of the attorney-client privilege can occur in several ways.

Attorney-client privilege waivers may be express or implied. *Sanmina*, 968 F.3d at 1116–17; *see also In re Itron, Inc.*, 883 F.3d 553, 558 (5th Cir. 2018). Express waivers[5] are within the control of the party asserting the privilege. *Sanmina*, 968 F.3d at 1116-17. Implied waivers are determined by courts under the "fairness principle." *Id*. at 1117.

---

[4] As defined in Jackson Walker's Response.
[5] "Express waiver" is sometimes referred to as "waiver by voluntary disclosure," and "implied waiver" is sometimes referred to as "waiver by claim assertion." *Bittaker v. Woodford*, 331 F.3d 715, 719 n.4 (9th Cir. 2003) (citations omitted).

6

Although it acknowledges a difference between an express waiver and an implied waiver, Jackson Walker seems to suggest that the "fairness principle" applies to both types of waiver. *See* JW Resp. at 11-12, ¶¶ 34-37. It does not. For express waivers, "voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject." *Sanmina*, 968 F.3d at 1117 (quoting *Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981); *cf. Bittaker*, 331 F.3d at 720 (explaining why express waiver cases were not useful in analyzing the scope of waiver under an implied waiver of privilege).

B. <u>Jackson Walker expressly waived any attorney-client privilege regarding the 2021 Draft Letter, 2021 Jarvis Request Letter, 2021 Memo, and 2022 Memo.</u>

A client expressly waives the attorney-client privilege by forwarding privileged information to a third party or otherwise shows disregard for the privilege by making the information public. *Samina*, 968 F.3d at 1116-17. Jackson Walker did so multiple times over, for example:

1. Jackson Walker shared alleged communications with Jarvis in the form of the "August __, 2021" drafts with the world by filing such documentation with the Southern District of Texas Bankruptcy Court in all 33 cases, *see, e.g.,* UST Mot., Ex. 1 at 8-12;

2. Jackson Walker shared the Respondents' alleged responsive legal advice by filing it in the same bankruptcy proceedings, *see id.*, Ex. 1 at 4, ¶ 15 (concluding with last sentence);

3. Jackson Walker shared the Respondents' 2021 Memo with adverse Freeman counsel (Tom Kirkendall) on April 21, 2022, *see id.*, Ex. 3 at 2;

4. Jackson Walker shared the Respondents' 2022 Memo with the same adverse Freeman counsel (Tom Kirkendall) on June 8, 2022, *see id.*, Ex. 4; and

7

5. Although Jackson Walker asserted the attorney-client privilege to the Respondents' 2022 Memo, *see id.*, Ex. 9 at 3, it later produced that memorandum to the U.S. Trustee on August 7, 2024. *See* Steele Decl., ¶ 11 (referencing confidentially marked and now sealed Exhibit 22).

Jackson Walker has treated its magic circle of attorney-client privilege as something far less than "sacred." *See* JW Resp. at 1, ¶ 1.

Jackson Walker first argues that because it only forwarded the 2021 Draft Letter and 2021 Jarvis Request Letter to Freeman to confirm or deny facts, the final version of that letter dated September 1, 2021, remains privileged. To support that claim, Jackson Walker points to an email stating that the letter would be sent to the Respondents in final form later. JW Resp. at 7, ¶ 22.

A fatal flaw in Jackson Walker's argument is that the first paragraph of the Respondents' 2021 Memo—for which Jackson Walker expressly waived the privilege—incorporates by reference the facts stated in Jackson Walker's final September 1 letter, rendering it unnecessary to "not fully repeat them here." UST Mot., Ex. 13 at 1. Once Jackson Walker waived the privilege associated with the Respondents' 2021 Memo, it likewise waived any privilege associated with materials explicitly referenced in the 2021 Memo. Just as the Ninth Circuit found a waiver of previously privileged legal memoranda when those memoranda were cited in a property valuation, and that valuation was then delivered to a third party, so too are the contents of Jackson Walker's September 1 letter waived by the forwarding of the 2021 Memo to opposing counsel, Tom Kirkendall. *See Sanmina*, 968 F.3d 1107 (finding waiver of privilege as to two in-house counsel memoranda footnoted in a property valuation later provided to third party, despite the valuation's marking on each page as "Attorney-Client Privilege – Confidential Draft").

8

Jackson Walker next suggests that complying with the U.S. Trustee's written discovery requests constitutes an involuntary act and cannot constitute a "voluntary" waiver of attorney-client privilege. JW Resp. at 9, ¶ 28. Not so. The applicable time for when Jackson Walker voluntarily waived its privilege was 2022 when it forwarded the 2021 Memo and 2022 Memo to Tom Kirkendall, not 2024 when Jackson Walker received the U.S. Trustee's discovery requests. Jackson Walker had full and exclusive control of its privilege in 2022. Nobody compelled Jackson Walker to waive it. It is not reversible. Jackson Walker's subsequent recognition in discovery of its prior express waiver does not now render its initial waiver involuntary. Once waived, the "magic circle" was broken and cannot be repaired. *See Bittaker*, 331 F.3d at 720 (With an express waiver, "once documents have been turned over to another party voluntarily, the privilege is gone, and the litigant may not thereafter reassert it to block discovery of the information and related communications by his adversaries.") (citation omitted).

C. Jackson Walker additionally or alternatively implicitly waived any attorney-client privilege regarding the 2021 Draft Letter, 2021 Jarvis Request Letter, 2021 Memo, and 2022 Memo.

 1. *Jackson Walker repeatedly put and continues to put the Respondents' retention and legal advice at issue.*

The Ninth Circuit employs a three-part test to determine whether there has been an implicit waiver of the attorney-client privilege. *United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999). First, the party asserting the privilege must take an affirmative act, such as raising a claim or defense. *Amlani*, 169 F.3d at 1195. Second, the asserting party's action must put the privileged information at issue. *Id.* at 1195. Third, permitting the privilege must deprive the adverse party of information "vital" to the asserting party's cause of action or defense. *Id.*

Jackson Walker first claims it never put the quality of the Respondents' "performance" at issue. JW Resp. at 12, ¶ 38. The U.S. Trustee does not allege that Jackson Walker has. Rather,

9

Jackson Walker has in its filings in the Bankruptcy Court, as well as here, repeatedly: (1) alleged that Jackson Walker's actions investigating and addressing Freeman's lack of disinterestedness were reasonable; and (2) highlighted Jackson Walker's retention of and seeking advice from the Respondents—counsel who claim special expertise "as a lawyer for lawyers," *see* UST Mot., Ex. 13 at 1—to justify those reasonableness claims.

Jackson Walker's statements in its filings in the Bankruptcy Court include but are not limited to:

Preliminary Response

- "Jackson Walker also took the additional step of consulting with outside ethics counsel *to ensure that it understood its legal and ethical obligations*. Specifically, and beginning on March 8, 2021, Jackson Walker contacted Peter Jarvis, Esq. of the *respected law firm* of Holland & Knight. Mr. Jarvis is a *nationally recognized expert on lawyer professional responsibility and ethics*, and was a co-author of *The Law of Lawyering*, a leading treatise on the subject." *Id.*, Ex. 1 at 4, ¶ 14 (emphases added).

- "Jackson Walker's outside ethics counsel *concluded* that the measures taken by Jackson Walker, *based on the facts stated in the letter*, which were confirmed by Ms. Freeman, *were sufficient to meet Jackson Walker's obligations*." *Id.*, Ex. 1 at 4, ¶ 15 (emphases added).

- "Upon learning from Ms. Freeman that her relationship with Judge Jones had resumed, Jackson Walker *again reached out to its outside ethics counsel, Mr. Jarvis*. Mr. Jarvis discussed the situation with Ms. Freeman's attorney. Jackson Walker

*concluded* that the only solution was for Ms. Freeman to leave." *Id.*, Ex. 1 at 5, ¶ 17 (emphases added).

Response

- "JW *immediately* consulted with *outside ethics counsel* and engaged Peter Jarvis *of the respected law firm of Holland & Knight*. JW took the *additional* step of . . . ." *Id.*, Ex. 2, ¶ 37 (emphases added).

- "JW *also* again engaged Mr. Jarvis." *Id.*, Ex. 2, ¶ 52 (emphases added).

- Jackson Walker's "belie[f]"—informed by the Respondents' 2022 Memo[6]—that the language initially suggested by Kirkendall and discussed among Kirkendall, Jackson Walker, and Respondents "was insufficient," resulting in Ms. Freeman's subsequent "departure from the law firm." *Id.*, Ex. 2, ¶ 53.

- "And after March 30, 2022, JW acted reasonably and responsibly and took the various remedial steps described above . . . ." *Id.*, Ex. 2, ¶ 144.

- "[O]nce JW confirmed the existence of the relationship, JW took appropriate actions in response thereto which, among other things, included: . . . (d) re-engaging with its outside *ethics expert*, Mr. Jarvis . . . ." *Id.*, Ex. 2, ¶ 183 (emphasis added).

Jackson Walker's continued statements regarding the Respondents in this Court include but are not limited to:

---

[6] Kirkendall circulated proposed disclosure language to Jackson Walker no later than April 27, 2022. *See* Steele Decl., Ex. 19 at 3 & 7-8. Respondents were re-engaged May 3, 2022, UST Mot. Ex. 9 at 1, and provided the 2022 memo on June 2, 2022. *Id.*, Ex. 9 at 3. As a result of the communications among Kirkendall, JW, and Respondents starting around May 10, 2022, Steele Decl., Ex. 18 at 6, and continuing until at least June 28, 2022, *id.*, Ex. 20 at 4, Freeman was presented with at least two options and did not elect option "b" until July 19, 2022. *Id.*, Ex. 21 at 1. Jackson Walker had the benefit of the 2022 Memo for <u>47 days</u> before the final decision regarding Freeman's eventual departure was made.

- "In its *Preliminary Response*, JW disclosed that in March 2021, upon first hearing allegations of an intimate relationship between Ms. Freeman and former Judge Jones, JW hired Peter Jarvis, Esq. as outside *ethics* counsel to *ensure* that JW *understood its legal and ethical obligations with respect to the alleged relationship*." JW Resp. at 2-3, ¶ 4 (emphases added).

- "At that time, JW again reached out to Mr. Jarvis for advice in light of new information JW received . . . ." *Id*. at 3, ¶ 5.

- To "underscore" its "belie[f]", "one of JW's partners sent Mr. Kirkendall the two memoranda from Mr. Jarvis to JW." *Id*. at 3, ¶ 5.

- "On March 8, 2021—two days after receipt of Mr. Van Deelen's email—JW engaged Mr. Jarvis, *a nationally recognized expert* on lawyer professional responsibility and ethics. JW sought legal advice from Mr. Jarvis in light of the relationship allegations and Ms. Freeman's confirmation of a prior romantic relationship with former Judge Jones. JW corresponded with Mr. Jarvis and Ms. Harvey for the next several months on this matter. *See* MTC Ex. 9 at 1." *Id*. at 5, ¶ 12.

Each of the above represents a voluntary "act" by Jackson Walker. Each of the above puts the reasonableness of the steps taken or not taken by Jackson Walker during its inquiry at issue. Whether Jackson Walker's beliefs or actions regarding Freeman's relationship were reasonable is a critical issue before the Bankruptcy Court. *See, e.g.*, UST Mot., Ex. 2, ¶¶ 1, 2, 10, 77, 79, 116, 136-38, 144-46, 160 (last bullet point) & 186. Those beliefs were informed by its counsel. *See* UST Mot., Ex. 2, ¶ 53; JW Resp. at 3, ¶ 5. Whether Jackson Walker retained counsel, who, what

if anything that counsel did, and whether Jackson Walker acted reasonably given its understandings as informed by counsel are squarely at issue in these proceedings.

The additional information—for example the facts actually represented to the Respondents in the withheld letter dated September 1, 2021—are vital, because they establish the grounds upon which the Respondents based their conclusions. Without them, the U.S. Trustee does not know the facts relied upon by JW's "outside ethics counsel." Without them, the U.S. Trustee and the U.S. Trustee's expert is unable to determine whether the steps taken by Jackson Walker were reasonable, permitting Jackson Walker to use the privilege as both a sword and shield.

> 2. *The "fairness principle" requires that the Respondents be compelled to produce documents responsive to their subpoenas.*

When a court finds implied waiver, the court essentially strikes a bargain and presents the holder of the privilege with a choice—either: (1) assert a defense based on what would otherwise be privileged information but waive that privilege and permit the opponent an opportunity to examine it; or (2) waive the defense based on privilege and continue to assert the privilege. *Bittaker*, 331 F.3d at 720 (citations omitted).

As recently explained in this District, an advice of counsel defense requires that an opposing party be able to evaluate those communications:

> If the advice of Plaintiff's counsel can be wielded as a complete defense, then at the very least, there must be some safeguard that allows Defendant to evaluate the communications at issue. . . . Thus, the logic . . . assumes that the viability of . . . [a] party's defense turns on issues like the accuracy and completeness of the information provided to counsel. Defendant should not be forced to blindly accept that Plaintiff's attorney-client communications were conducted in good faith. To hold otherwise, this Court would be endorsing a legal scheme where any clever party could immunize itself from a wrongful arrest claim by simply providing misleading information to its counsel and obtaining a legal opinion exonerating it from liability.

*Dry Bulk Singapore Pte. Ltd. v. M/V Amis Integrity (IMO 9732412) her engines, freights, apparel, appurtenances, tackle, etc.*, No. 3:19-CV-01671-IM, 2022 WL 263492, at *4 (D. Or. Jan. 28, 2022)

13

(omitting footnote 5 determining that the reputation of counsel has no bearing on whether documents can be withheld).

This is precisely the scenario before this Court. Jackson Walker has voluntarily and repeatedly put the retention of and advice from the Respondents at issue. Although Jackson Walker has provided some of the advice it received from Respondents to the U.S. Trustee, Jackson Walker has not produced the remainder, which bears on Jackson Walker's "understandings" and allegedly reasonable actions. Moreover, the facts upon which the disclosed advice was founded have not been provided. Fairness dictates that they must.

In accordance with this "fairness principle," *see also* JW Resp. at 11-12, ¶ 36, the U.S. Trustee specifically requested that Jackson Walker strike its references to its retention of and advice received from the Respondents. *See* UST Mot., Ex. 10. Jackson Walker refused. *See id.*, Exs. 11 & 15. Jackson Walker cannot both claim an attorney-client privilege with the Respondents and maintain a defense relying on the Respondents' retention and legal advice. It cannot have its cake and eat it, too. Jackson Walker must choose one or the other.

> 3. *The fairness principle requires subject matter waiver of privileged materials relating to the 2021 Memo and 2022 Memo.*

If preservation of the attorney-client privilege results in "*a selective and misleading presentation of evidence* to the disadvantage of the adversary," fairness requires subject matter waiver. *See* JW Resp. at 12, ¶ 37 (quotation omitted and alternate emphases provided). There is no scienter element to this portion of the fairness principle. Rather, the documents produced and withheld only need to objectively result in incomplete and therefore misleading presentation of the evidence to the U.S. Trustee's disadvantage. *See id.*

Jackson Walker's waivers to-date present an incomplete picture for several reasons. First, although the U.S. Trustee may not know every communication currently withheld, the U.S. Trustee

14

has demonstrated that the Respondents have withheld allegedly privileged and non-privileged communications. *Supra*, II.B. Second, Jackson Walker cannot rely upon and provide the Respondent's advice without also providing the facts upon which that advice is founded. *Supra*, III.B & III.C.1-2. Third, Jackson Walker avers that it "has not claimed that its actions were reasonable ***because*** those actions were based on advice of counsel. To the contrary, many of JW's actions were taken prior to and independent of receiving advice from Mr. Jarvis and Ms. Harvey." JW Resp. at 13 n.11 (emphasis in original). This statement is at best incomplete and misleading and at worst belied by the facts.

The carefully crafted wording of Jackson Walker's representation on its face confirms that not all—but rather an undisclosed amount of "many"—of its actions were allegedly taken prior to and independent of the Respondents' advice. The U.S. Trustee is entitled to know which ones occurred before and which ones occurred after. Jackson Walker's Response is equally cagey when it represents that it asked Freeman only to confirm "certain" facts with the August __, 2021 drafts. *Id*. at ¶ 3, 4. The U.S. Trustee is entitled to know which facts Jackson Walker sought to confirm and which ones it did not.

Jackson Walker selectively omits that although the Respondent did not send the 2021 Memo until September 22, 2021, *see* UST Mot., Ex. 13, Jackson Walker began seeking legal advice from the Respondents more than nine months earlier. *See id*., Ex. 9 at 1. Even if Jackson Walker did not have the Respondents' 2021 Memo in-hand, Jackson Walker still could have relied upon the Respondents' advice when the August __, 2021 drafts were written. Jackson Walker also selectively omits that it received the Respondents' 2022 Memo 47 days before the final decision regarding Freeman's eventual departure. *Supra* III.C.1 n.6. Jackson Walker's representation that it "informed Mr. Kirkendall and Ms. Freeman on or around June 2022 that it believed Ms.

Freeman's departure from the law firm was the *only* path forward," *see* UST Mot., Ex. 2 (emphasis added), ¶ 53: (1) directly coincides with or follows the date of the Respondent's 2022 Memo on June 2, 2022, *see* sealed Ex. 22; and (2) omits at least one additional "option a" presented to Freeman.  *See* Steele Decl., Ex. 21 at 1.

All of these factors work to the unfair disadvantage of the U.S. Trustee, and the U.S. Trustee cannot test the veracity of Jackson Walker's statements without access to the remainder of the waived subject matter at issue.  Under Ninth Circuit law, a litigant waives the privilege when its defense puts communications with counsel at issue:

> Where a client's state of mind *or knowledge*, such as whether the client acted negligently or deceptively, is at issue, the attorney-client privilege with respect to attorney-client communications that have bearing on that state of mind or knowledge may be waived.  A defendant waives the attorney-client privilege where its good faith defense places knowledge of the law and its communications with counsel directly at issue.  *Even if the privilege holder does not attempt to make use of the privileged communication*, he may waive the privilege *if he makes factual assertions, the truth of which can only be assessed by examination of the privileged communications*.

*Phelps v. MC Commc'ns, Inc.*, No. 2:11-CV-00423-PMP, 2013 WL 3944268, at *18 (D. Nev. July 22, 2013) (quotations and citations omitted and emphasis added).

Just like in *Dry Bulk*, "there is a common thread running through almost all of the withheld documents."  2022 WL 263492, at *5.  The 2021 Draft Letter, 2021 Jarvis Request Letter, 2021 Memo, and 2022 Memo, Kirkendall and Jackson Walker's claimed privilege logs, and additional communications among Kirkendall, Jackson Walker, and Respondents all relate to what facts Jackson Walker and the Respondents knew and what alternatives were available.  Like in *Dry Bulk*, "*all* of the documents pertain to '*pre-*'" U.S. Trustee action in late2023.  *See id.*, at *5 (emphases in original); *see also* JW Resp. at 2, ¶¶ 2-4 (reflecting timing of U.S. Trustee action).  Just as in *Dry Bulk*, the fairness principle animates subject matter waiver, because it is necessary for the U.S.

16

Trustee to obtain the subpoenaed documents "in order to understand the content of the legal communications contained in" previously waived material. 2022 WL 263492, at *5.

For these reasons, subject matter waiver should apply to Jackson Walker and the 2021 Draft Letter, 2021 Jarvis Request Letter, 2021 Memo, 2022 Memo, and related communications.

## **RELIEF REQUESTED**

For the reasons stated above and on the record herein and in the Bankruptcy Court, the U.S. Trustee respectfully requests that the Court grant the U.S. Trustee's Motion, compel discovery from the Respondents, and grant any other relief the Court deems equitable or necessary.

Date: September 24, 2024　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　KEVIN M. EPSTEIN
　　　　　　　　　　　　　　　　　　　　UNITED STATES TRUSTEE
　　　　　　　　　　　　　　　　　　　　REGION 7, SOUTHERN AND WESTERN
　　　　　　　　　　　　　　　　　　　　DISTRICTS OF TEXAS

　　　　　　　　　　　　　　　　　　　　By: */s/ Vianey Garza*
　　　　　　　　　　　　　　　　　　　　　　Laura Steele, Trial Attorney
　　　　　　　　　　　　　　　　　　　　　　Wisconsin Bar No. 1065702
　　　　　　　　　　　　　　　　　　　　　　Office of the United States Trustee
　　　　　　　　　　　　　　　　　　　　　　517 E. Wisconsin Ave., Suite 430
　　　　　　　　　　　　　　　　　　　　　　Milwaukee, Wisconsin 53202
　　　　　　　　　　　　　　　　　　　　　　(414) 297-4499 ) - Telephone
　　　　　　　　　　　　　　　　　　　　　　Email: Laura.Steele@usdoj.gov
　　　　　　　　　　　　　　　　　　　　-and-
　　　　　　　　　　　　　　　　　　　　　　Vianey Garza, Trial Attorney
　　　　　　　　　　　　　　　　　　　　　　Tex. Bar No. 24083057/Fed. ID No. 1812278
　　　　　　　　　　　　　　　　　　　　　　Alicia L. Barcomb, Trial Attorney
　　　　　　　　　　　　　　　　　　　　　　Tex. Bar No. 24106276/Fed. ID No. 3456397
　　　　　　　　　　　　　　　　　　　　　　Office of the United States Trustee
　　　　　　　　　　　　　　　　　　　　　　515 Rusk, Suite 3516
　　　　　　　　　　　　　　　　　　　　　　Houston, Texas 77002
　　　　　　　　　　　　　　　　　　　　　　(713) 718-4650 – Telephone
　　　　　　　　　　　　　　　　　　　　　　(713) 718-4670 – Fax
　　　　　　　　　　　　　　　　　　　　　　Email: vianey.garza@usdoj.gov
　　　　　　　　　　　　　　　　　　　　　　　　　　alicia.barcomb@usdoj.gov
　　　　　　　　　　　　　　　　　　　　-and-
　　　　　　　　　　　　　　　　　　　　　　Stephen P. Arnot
　　　　　　　　　　　　　　　　　　　　　　Assistant United States Trustee
　　　　　　　　　　　　　　　　　　　　　　Oregon Bar No. 070765

>Office of the United States Trustee
>1220 SW 3rd Avenue, Suite 315
>Portland, OR 97204
>Tel: (503) 326-4004
>Email: steve.arnot@usdoj.gov

## CERTIFICATE OF SERVICE

      I hereby certify that on September 24, 2024 I emailed a copy of the foregoing **UNITED STATES TRUSTEE'S REPLY IN SUPPORT OF MOTION TO COMPEL DISCOVERY** upon the following named person(s) on the date indicated below:

Counsel for Jackson Walker
**Norton Rose Fulbright US LLP**
Jason Boland
jason.boland@nortonrosefulbright.com
William Greendyke
william.greendyke@nortonrosefulbright.com
Maria Mokrzycka
maria.mokrzycka@nortonrosefulbright.com
Paul Traham
paul.trahan@nortonrosefulbright.com
Emily Wolf
emily.wolf@nortonrosefulbright.com
Julie Harrison
julie.harrison@nortonrosefulbright.com

**Rusty Hardin & Associates LLP**
Rusty Hardin
rhardin@rustyhardin.com
Leah Graham
lgraham@rustyhardin.com
Emily Smith
esmith@rustyhardin.com
Jennifer Brevorka
jbrevorka@rustyhardin.com

**Black Helterline LLP**
Oren B. Haker
oren.haker@bhlaw.com
Britta E. Warren
britta.warren@bhlaw.com
Matthew D. Colley
matthew.colley@bhlaw.com

Counsel for Peter Jarvis and Jacqueline Harvey
**Holland & Knight LLP**
Jose Casal
Jose.Casal@hklaw.com
Joseph L. Franco
Joe.Franco@hklaw.com

      */s/ Vianey Garza*
      Vianey Garza

## CERTIFICATE OF COMPLIANCE

      This response complies with the applicable word-count limitation under LR 26-3(b), as modified by this Court's order, because it contains 5,553 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

                                                      */s/ Vianey Garza*
                                                      Vianey Garza